MIDWEST CONCRETE PRODUCTS COMPANY, Plaintiff and Counter-defendant-Appellee, *v.* LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (4th Division)    No. 80-558

Opinion filed March 19, 1981.

Gaines & Boyer, of Chicago (Alan I. Boyer and William S. Piper, of counsel), for appellants.

Crandell & Hoag, of Chicago (Rosaland M. Crandell, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff subcontractor, Midwest Concrete Products Company (Midwest), entered into an agreement with the defendant general contrac-

tor, Home Builders of America, Inc. (Home Builders), to supply and install precast concrete products for racquetball courts being constructed by Home Builders. Midwest brought this suit to foreclose its subcontractor's lien against Home Builders. Also joined as defendants were Jordan and Walter Kaiser (Kaisers), the owners of the property involved, and Lake Shore Racquet Club, Inc. (Lake Shore), which operated a sports center located on the property. The trial court found in favor of Midwest on its claim for lien and entered judgment against the defendants in the amount of $35,260.20 plus costs. There is no appeal from that judgment. Midwest does, however, appeal from the court's refusal to award attorneys' fees as provided in the contract.

Lake Shore filed a counterclaim against Midwest claiming damages for lost profits due to Midwest's failure to complete its work on time. Pursuant to a motion to dismiss the counterclaim, an amended counterclaim was filed alleging an identity of interest between the Kaisers, Home Builders and Lake Shore and asserting that Lake Shore had a right to sue on the contract between Home Builders and Midwest because it was a third-party beneficiary of that contract. Although the Kaisers and Home Builders were joined as counterplaintiffs, only Lake Shore sought relief. The court denied the claim for lost profits on the grounds that Lake Shore was involved in a new business and that proof of lost profits from a new business is necessarily speculative. However, the court did award Lake Shore $1,902 for damage to carpeting. Lake Shore appeals the denial of that portion of their claim concerning lost profits. Midwest contends that the court erred in awarding Lake Shore damages for carpeting in that Lake Shore was neither a party to the contract nor a third-party beneficiary.

■■■ Midwest contends that Lake Shore, which was not a party to the subcontract between Midwest and Home Builders, had no right to sue for its breach. Lake Shore argues that it had a right to sue as a third-party beneficiary under the subcontract. If a contract is entered into for the direct benefit of a third person, that person may sue for breach of the contract even though he is not a party. (*Carson Pirie Scott & Co. v. W. J. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) Whether a party is a third-party beneficiary depends upon the intent of the parties and must be determined on a case-by-case basis. (*Vinylast Corp. v. Gordon* (1973), 10 Ill. App. 3d 1043, 295 N.E.2d 523.) In making this determination, it must appear from the language of the contract when properly construed that the contract was made for the *direct* benefit of the third person and that the benefit was not merely incidental. (*Young v. General Insurance Company of America* (1975), 33 Ill. App. 3d 119, 337 N.E.2d 739.) It has been observed that:

"[I]t is not sufficient that the performance of the [contract] may

benefit a third person, * * * it must have been entered into for his benefit, or at least such benefit must be the direct result of performance and so within the contemplation of the parties. * * * [I]nasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration." (17 Am. Jur. 2d *Contracts* §304, at 729-30 (1964).)

The terms of the contract are controlling with respect to the rights of a third-party beneficiary. Liability cannot be extended beyond the terms of the contract merely on the ground that the situation and circumstances of the parties justify further liability. *Carson Pirie Scott & Co. v. W. J. Parrett.*

Lake Shore does not dispute the legal requirements necessary to establish a third-party beneficiary. Rather, it argues that by awarding actual damages to Lake Shore, the trial court implicitly found that it met those requirements. Lake Shore contends that this finding is supported by the manifest weight of the evidence.

The subcontract contains no language which expressly states that it was made for the benefit of Lake Shore. Lake Shore argues that although it was not expressly designated as a third-party beneficiary, it was reasonably within the contemplation of the parties that Lake Shore would be entitled to enforce the provisions of the subcontract. It supports this argument by noting that the subcontract was made "subject to" the terms of the general contract, which provided for liquidated damages in the amount of $5000 for each day that Lake Shore was delayed in opening the racquetball courts. Midwest was thus fully aware that it could be held liable for any delay which it caused. Midwest does not dispute its liability for delaying the completion of the project. It merely contends that it would be liable only to Home Builders, the party with whom it contracted.

■■ A consideration of the entire contract and the circumstances surrounding the parties does not reveal an intent to directly benefit Lake Shore. It appears that Midwest and Home Builders were acting entirely in their own self-interest when they entered into the subcontract. Home Builders contracted with Midwest in order to obtain the concrete materials necessary to fulfull its obligations under the general contract. Midwest agreed to supply and install the materials because it anticipated that it would make a profit on the project. Although it is true that Lake Shore benefited as a result of the subcontract, this benefit was merely incidental and did not give Lake Shore the right to sue for breach of the subcontract. See *Vogel v. Reed Supply Co.* (1970), 277 N.C. 119, 177 S.E.2d 273; 4 Corbin, Contracts §779D, at 46-47 (1951).

■■ The fact that the subcontract was made "subject to" the terms of the general contract is not in itself sufficient to cast Lake Shore in the role of a third-party beneficiary. The general contract is referred to merely to set forth a description of the work to be done by Midwest and to define the obligations of ꞏall the parties involved in the project. (See *Young v. General Insurance Company of America* (1975), 33 Ill. App. 3d 119, 337 N.E.2d 739.) We do not believe that it was intended to have the effect of extending liability to Lake Shore, which was not a party to the subcontract.

We next consider Midwest's contention that the trial court erred in denying its claim for attorneys' fees. The subcontract provided as follows:

> "Buyer [Home Builders] hereby agrees to pay all costs incurred, including a reasonable attorney's fee in connection with Buyer's default hereunder."

The court based its decision to deny Midwest's claim for attorneys' fees on its finding that Midwest, through its delay, had breached the subcontract.

■■ Attorneys' fees are recoverable when specifically authorized by statute or contract. (*Qazi v. Ismail* (1977), 50 Ill. App. 3d 271, 364 N.E.2d 595.) The trial court found in favor of Midwest on its claim for a subcontractor's lien and entered judgment against Home Builders in the amount of the adjusted contract price. No appeal is taken from that judgment. We therefore believe that Midwest is entitled to recover the attorneys' fees which it incurred as a result of Home Builders' failure to pay the agreed upon amount.

In accordance with our finding that Lake Shore had no right to sue on the subcontract, that portion of the court's judgment which denied Lake Shore's request for lost profits is affirmed, and the portion which awarded actual damages to Lake Shore in the amount of $1,902 is reversed. The part of the judgment denying Midwest's attorneys' fees is reversed and remanded for a hearing to determine a reasonable attorneys' fee to be awarded Midwest.

Affirmed in part, reversed in part, and reversed and remanded in part with directions.

JOHNSON, and LINN, JJ., concur.