ROGER J. POWERS, Plaintiff-Appellee, v. ROCKFORD STOP-N-GO, INC., Defendant-Appellant.

Second District    No. 2—00—1127

Opinion filed November 28, 2001.—Rehearing denied January 17, 2002.

Eric J. VanVugt, Steven J. Berryman, and Julie C. Relihan, of Quarles & Brady, L.L.P., of Milwaukee, Wisconsin, for appellant.

Clayton L. Lindsey and Kari A. Vanderzyl, both of Williams & McCarthy, P.C., of Oregon, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Following a bench trial, the trial court entered judgment for $875 in favor of plaintiff-lessor, Roger Powers, and against defendant-lessee, Rockford Stop-N-Go, Inc. The trial court also held that the lease agreement between the parties allowed for an award of attorney fees and awarded plaintiff $37,918 for attorney fees. Defendant timely appeals, contending (1) that the trial court erred, as a matter of law, when it construed the lease to allow an award of attorney fees and (2) the trial court abused its discretion because it failed to determine whether the fee award was reasonable. We affirm in part and reverse in part.

This matter arose out of various disputes regarding defendant's use of property leased from plaintiff as a gas station and convenience store. However, because neither party has appealed the trial court's judgment on the merits of the underlying action, it is unnecessary to

set out the trial testimony regarding the disputed issues here. The lease was signed by the parties on January 22, 1988. The terms of the lease provided for an initial term of 10 years beginning on April 1, 1988, and granted defendant the option to extend the lease for two successive 5-year periods.

In October 1998 plaintiff filed his original complaint, and on January 27, 1999, he filed an amended complaint. Count I of the amended complaint alleged that defendant breached the lease by allowing leaks or discharges of petroleum products and that the environmental contamination decreased the value of the property. Plaintiff prayed for damages in excess of $50,000. Count II alleged that the operation of a gas station was an ultrahazardous activity and that defendant was strictly liable for the same damages alleged in count I. Count III alleged that defendant had improperly expanded its use of plaintiff's property beyond the area subject to the lease by selling propane, ice, and other goods outside the store building and by refusing to relocate an air conditioning unit. Count IV reiterated the allegations of count III and alleged that defendant's actions constituted a trespass to plaintiff's real property. Count V alleged that defendant had breached the lease by installing overflow tanks above its underground storage tanks that raises them above grade and resulted in damage to plaintiff's parking area. Count VI alleged that plaintiff had incurred legal fees totaling $6,456 as a result of the environmental contamination and that defendant was required to reimburse those costs. Count VI also alleged that defendant had installed, and later removed, pay telephones on the exterior of the building, causing damages of $4,334. Count VII alleged that defendant was in default of the lease and prayed for an order evicting defendant.

Defendant filed several counterclaims alleging that plaintiff (1) interfered with defendant's quiet enjoyment of the leasehold by harassing defendant's customers and vendors, (2) failed to maintain the parking areas as required by the lease, and (3) unreasonably refused to allow defendant to improve the convenience store. Defendant sought an injunction against future harassment, specific performance of the lease, as well as a declaration that outdoor displays were a customary use allowed by the lease.

At trial plaintiff argued that he was entitled to (1) an order terminating the lease, (2) an order requiring defendant to complete remediation by December 31, 2000, (3) an award of attorney fees, (4) an order requiring defendant to repair the damage caused by the installation of the pay telephones, (5) an order requiring defendant to remove the outdoor displays, and (6) an order requiring defendant to relocate an air conditioning unit. Defendant argued that it was entitled to (1)

an order enjoining plaintiff from interfering with its quiet enjoyment, and (2) an award of attorney fees.

On May 1, 2000, the trial court issued a memorandum decision. The trial court held that minor spillage of petroleum products was expected during the operation of a gas station and that the parties anticipated such spillage would occur. The trial court further held that under the lease defendant warranted that it would not allow contamination resulting from spillage. The trial court held that breach of that warranty did not automatically give plaintiff the right to terminate the lease because defendant had a right to cure the breach. The trial court further held that because of the nature of environmental contamination the lease's 20-day cure requirement did not apply but, instead, defendant was required to use due diligence to remediate any contamination. The trial court concluded:

"I find that, to date, [d]efendants [*sic*] have used due diligence in remediating the site and should be allowed to continue to completion. There is no reason why it cannot remediate the site by December 30, 2000. I will enter an order that they complete the Corrective Action Plan at its own expense by that date, as a remedy for breach of contract. I do not find the breach a material breach of the contract that would justify [p]laintiff to terminate the tenancy at this time. Failure to use due diligence in curing the breach would be cause to terminate its tenancy.

Pursuant to the [l]ease, attorney fees shall be paid by [d]efendant for the enforcement of the lease. I will award the same."

The trial court held that the failure to remove equipment outside the demised premises would constitute a willful trespass. The court held that there was no complaint for trespass, refused to enter an order directing defendant to remove equipment, and instead declared the rights of the parties regarding the issue. The trial court held that the sale of merchandise from outdoor displays was a customary use at convenience stores and that defendant had not breached the lease by doing so.

The trial court also held that pay telephones were a customary use. However, the trial court found that defendant had breached the lease by failing to obtain written permission before attaching pay telephones to the building. The trial court found that the amount sought by plaintiff, the cost of residing the building, was unreasonable and awarded plaintiff $875 for damages to the siding. The trial court denied defendant's counterclaims regarding peaceful enjoyment, maintenance of the parking areas, and unreasonably refusing to allow improvements to the store.

Defendant subsequently filed a motion to reconsider the trial

court's award of attorney fees. The trial court denied defendant's motion and entered judgment for fees in the amount of $37,918. Defendant timely appeals.

■ ■ The general rule is that the unsuccessful party in a lawsuit is not responsible for the other party's attorney fees. *Mirar Development, Inc. v. Kroner*, 308 Ill. App. 3d 483, 488 (1999). The parties to a contract may alter this rule, but contract provisions regarding attorney fees should be strictly construed and enforced at the discretion of the trial court. *Mirar*, 308 Ill. App. 3d at 488. To determine a reasonable fee award, a court must consider (1) the skill and standing of the attorney employed, (2) the nature of the cause, (3) the novelty and difficulty of the questions, (4) the amount and importance of the subject matter, (5) the degree of responsibility in the management of the case, (6) the time and labor required, (7) the usual and customary charges in the community, and (8) the benefits resulting to the client. *Collins v. Hurst*, 316 Ill. App. 3d 171, 173 (2000). A trial court's award of attorney fees will not be disturbed on appeal unless it amounts to an abuse of discretion. *Collins*, 316 Ill. App. 3d at 173.

■ A successful litigant is still considered the prevailing party under a fee-shifting provision even if the judgment amount is below the amount claimed. *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 281 (2001); *Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 228 (7th Cir. 1989) (interpreting Illinois law). The fact that a litigant is not successful on all claims does not alter the right to attorney fees, and the prevailing party is entitled to all reasonable attorney fees. *J.B. Esker*, 325 Ill. App. 3d at 380-81. However, when the dispute involves multiple claims and both parties have won and lost on different claims, it may be inappropriate to find that either party is the prevailing party and an award of attorney fees to either is inappropriate. *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1035 (1999); *Raffel v. Medallion Kitchens of Minnesota, Inc.*, 139 F.3d 1142, 1147 (7th Cir. 1998) (interpreting Illinois law).

For example, in *Raffel*, a lessor obtained a judgment for approximately $13,000 for one month's rent and late fees, but the lessee successfully defended against a claim for additional late fees of approximately $80,000 when the trial court ruled that the larger amount constituted an unenforceable penalty. The reviewing court affirmed the trial court's finding that the lessor was not entitled to attorney fees because it had failed on the "most significant claim" and the case was "essentially a draw." *Raffel*, 139 F.3d at 1147.

In the case before us, the lease agreement provided:

"Each party agrees to pay and discharge all reasonable costs, at-

torneys' fees and expenses which may be incurred or made by the other in enforcing the covenants and agreements of this lease."

Similar language has been construed to allow recovery for the prevailing party in an action to enforce a lease. See *Pennsylvania Truck*, 882 F.2d at 227, citing *Pioneer Trust & Savings Bank v. Zonta*, 96 Ill. App. 3d 339, 349 (1981). However, Illinois courts have not interpreted this language to allow an award of attorney fees in a declaratory judgment action because such actions declare but do not enforce a party's rights under a lease. *Pennsylvania Truck*, 882 F.2d at 228, citing *Arrington v. Walter E. Heller International Corp.*, 30 Ill. App. 3d 631, 642 (1975).

■ Defendant contends that the trial court erred when it held as a matter of law that the lease allowed an award of attorney fees and that this is an issue subject to *de novo* review. When the facts are not in dispute, the circuit court's application of the law is a matter that we may review *de novo*. See *Mirar*, 308 Ill. App. 3d at 485. However, we find no error in the trial court's legal conclusion that the lease provision at issue allowed for an award of attorney fees. Illinois courts have repeatedly construed similar language as a valid fee-shifting provision. See *Zonta*, 96 Ill. App. 3d at 349; *Wanderer v. Plainfield Carton Corp.*, 40 Ill. App. 3d 552, 560 (1976). However, consistent with the strict construction given such provisions (see *Mirar*, 308 Ill. App. 3d at 488), we feel that it is important to explicitly identify a limitation implicit in these earlier cases—that attorney fees may only be awarded to a prevailing party. The word "enforce" means "to compel obedience to." Black's Law Dictionary 528 (6th ed. 1990). Accordingly, we hold that a party is entitled to an award of attorney fees under this provision only when she or he can demonstrate that the other party was compelled by the trial court to obey a condition of the lease.

The ultimate question before us, however, is not a matter subject to *de novo* review. Whether either party prevailed or compelled the other to obey the lease in the trial court below involves an application of the facts to this principle of law. Therefore, it remains a matter committed to the discretion of the trial court (see *Mirar*, 308 Ill. App. 3d at 485), and the question before us is whether the trial court abused its discretion when it determined that plaintiff was the prevailing party. We answer this question by examining the various claims and the trial court's rulings.

The trial court awarded plaintiff monetary damages on only a single claim, the damage to the building resulting from the installation of pay telephones. The amount awarded ($875) was less than the amount claimed ($4,334), but this discrepancy does not alter the fact that plaintiff successfully prosecuted this claim. See *J.B. Esker*, 325 Ill. App. 3d at 280-81.

Although plaintiff's complaint alleged defendant caused damages to the landscaping and parking area, plaintiff apparently abandoned these issues at trial. Plaintiff did not address these issues in his closing argument. The trial court did not rule on these issues, and plaintiff did not demand a ruling on these issues. Therefore, because the trial court did not compel compliance with these provisions of the lease, we cannot find that either plaintiff or defendant prevailed on the landscaping or parking area issues.

Plaintiff raised several claims with regard to the sale of merchandise outside defendant's store and argued that such sales violated the lease. The trial court ruled for defendant on these issues, finding that such sales did not violate the provisions of the lease.

The trial court declared that plaintiff had a right to revoke his permission and demand the removal of an air conditioning unit located on his property outside the leased premises. However, plaintiff's success on this issue is irrelevant to the question of attorney fees because the trial court held that this was a matter independent of the lease. Therefore, the contractual provision for attorney fees included in the lease does not apply. Moreover, the fee-shifting provision of the lease would not apply to this issue because plaintiff obtained only a declaration of rights. See *Pennsylvania Truck*, 882 F.2d at 228.

The most significant issue at trial involved environmental contamination. The trial court ordered defendant to complete the remediation of this contamination by a date certain. However, we determine that despite this order plaintiff did not prevail on this issue. Plaintiff sought to terminate the lease based on the contamination. The trial court ruled in favor of defendant and held that the contamination was not a material breach that justified the termination of the lease. The trial court held that the lease required defendant to use due diligence to remediate the contamination, but it also found that defendant had used due diligence. The trial court set a date certain for completion, but this ruling did not constitute a judgment in favor of plaintiff; it was instead a declaratory judgment. The trial court's ruling was prospective: it held that defendant was required to use due diligence to complete the remediation and that, by using due diligence, defendant could complete the remediation by a date certain. Therefore, we determine that the trial court's rulings on the contamination issues were essentially a draw—defendant was required to do nothing it had not already agreed to do, and plaintiff received only the assurance that defendant would continue the remediation efforts already begun.

■ We conclude that the trial court abused its discretion when it held that plaintiff was entitled to attorney fees. Although plaintiff suc-

cessfully obtained a judgment for damages resulting from the installation of pay telephones, this issue was not significant relative to either the value of the remaining claims, their complexity, or the time devoted to the other issues at trial. When value, complexity, and time are considered, the most significant issue was the environmental contamination. However, the trial court's ruling on this issue did little more than maintain the status quo. Defendant prevailed on the remaining issues. Therefore, we determine that the trial court abused its discretion when it determined that plaintiff was a prevailing party for the purposes of a fee-shifting agreement. See *Brown & Kerr*, 306 Ill. App. 3d at 1035. Because plaintiff did not prevail on a significant issue, he was not entitled to any attorney fees. Accordingly, we reverse the portion of the judgment that awarded plaintiff attorney fees; we affirm all other aspects of the judgment.

For the foregoing reasons, the judgment of the circuit court of Boone County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

McLAREN and BOWMAN, JJ., concur.